**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MARIA LUISA CORRAL TORRES,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **NO.  EP-14-CV-0313-ES** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff brings this civil action seeking judicial review of an administrative decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas, the case was transferred to a United States Magistrate Judge to conduct any and all further proceedings in the cause, including trial and entry of judgment. [ECF No. 14] For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

**I. FACTS AND PROCEEDINGS**[1]

In August 2011 Plaintiff filed an application for DIB benefits with an alleged onset date of August 19, 2011, due to vision problems and pain in her hands and legs.[2] (R:13, 106) After her application was denied initially and on reconsideration, an Administrative Law Judge (ALJ) held a

---

[1] Reference to the Administrative Record, contained in Docket Entry Number 15, is designated by an "R" followed by the page number(s).

[2] The application contained in the record is for supplemental security income under Title XVI of the Social Security Act. (R:106) However, the other documentation and the ALJ's decision refer to disability insurance benefits under Title II of the Act.

hearing in March 2013. (R:13, 32-52, 53, 54) The ALJ issued a decision on April 25, 2013, concluding that Plaintiff was not disabled. (R:13-22) The Appeals Council denied review, making the ALJ's decision the final administrative decision of the Commissioner. (R:1-8) This appeal followed, and a hearing on it was held on July 6, 2016. [ECF No. 25]

## II. ISSUES

Plaintiff contends that the ALJ erred in failing to find that she had a severe visual impairment and in failing to consider her visual problems in determining her residual functional capacity (RFC). She asserts that the ALJ's failure to properly consider the record resulted in a decision unsupported by substantial evidence. She contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to two inquiries: whether the decision is supported by substantial evidence on the record as a whole; and whether the Commissioner applied the proper legal standard. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner and not for the courts to resolve. *Perez*, 415 F.3d at 461.

## IV. EVALUATION PROCESS

A claimant bears the burden of proving disability, which is defined in cases other than blindness, as any medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505(a); *Masterson*, 309 F.3d at 271.

The ALJ evaluates disability claims according to a sequential five-step process:

1. Is the claimant engaged in substantial gainful activity?
   A claimant who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. Does the claimant have a "severe" impairment?
   A claimant who does not have a severe impairment or combination of impairments will not be found disabled;

3. Does the impairment meet or equal the severity of an Appendix 1 impairment?
   A claimant who has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

4. Is the claimant able to perform her past relevant work?
   If a claimant is capable of performing work she has done in the past, a finding of "not disabled" must be made; and

5. Is the claimant able to perform other substantial gainful work in the economy?
   If a claimant's impairment prevents her from doing any other substantial gainful activity, taking into account age, education, past work experience, and residual functional capacity, a finding of disabled will be made.

*Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *see also* 20 C.F.R. § 404.1520.

Before proceeding from step 3 to step 4, the Commissioner must assess the claimant's RFC which is defined as the most the claimant can still do despite her physical and mental limitations. *See Perez*, 415 F.3d at 461-62. The RFC is used at step 4 to determine if the claimant can continue

3

to perform her past relevant work. *Id.* at 462. At step 5 the RFC is used to determine whether the claimant is capable of performing any other work. *Id.*

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant meets this burden, the burden then shifts to the Commissioner at step 5 to show that there is other gainful employment available that the claimant is capable of performing in spite of her existing impairments. *Crowley v. Apfel*, 197 F.3d. 194, 198 (5th Cir. 1999). If the Commissioner meets this burden, the claimant must then prove that she cannot perform the alternate work. *Id.*

The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett*, 67 F.3d at 564. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Id.*

The mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of her impairments and how they affect her ability to work. *See* 20 C.F.R. § 404.1512(c). Her own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

## V. THE ALJ'S DECISION

After reviewing the record evidence, the ALJ made the following determinations:

1. Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. (R:15)

2. Plaintiff had not engaged in substantial gainful activity since August 19, 2011, the

4

alleged onset date. (R:15)

3. Plaintiff had a severe impairment of osteoarthritis, but did not have a severe visual impairment. (R:15)

4. Plaintiff did not have a visual impairment other than exotropia.[3] (R:16)

5. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically the impairments listed in sections 1.00 and 2.00.[4] (R:16)

6. Plaintiff retained the functional capacity to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). (R:16) *See* 20 C.F.R. § 404.1567(b).[5]

7. Plaintiff was capable of performing her past work as a store attendant. (R:21)

Consequently, the ALJ concluded that Plaintiff was not disabled from her alleged onset date through the date of the ALJ's decision. (R:21)

## VI. DISCUSSION

Plaintiff contends that the ALJ erred in failing to find that she had a severe visual impairment at step 2 of the sequential analysis, which in turn compromised subsequent steps of the

---

[3] Exotropia refers to a permanent deviation of the visual axis of one eye away from that of the other. *See Dorland's Illustrated Medical Dictionary*, 634 (29th ed. 2000).

[4] Section 2.00 of the Listing of Impairments discusses visual disorders and the criteria to establish statutory blindness. Statutory blindness is defined as central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. 20 C.F.R. § 404.1581; 20 C.F.R. Part 404, Subpart P, App. 1, § 2.02. An eye which has a visual field limitation such that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered as having a central visual acuity of 20/200 or less. 20 C.F.R. § 404.1581; 20 C.F.R. Part 404, Subpart P, App. 1, § 2.03A. Additionally, blindness must meet the durational requirement in 20 C.F.R. § 404.1509 of having lasted or being expected to last at least 12 months. *See* 20 C.F.R. § 404.1581. If a claimant is determined to be statutorily blind, eligibility for disability benefits is evaluated pursuant to 20 C.F.R. § 404.1581 through 404.1587. *See* 20 C.F.R. § 404.1505(b).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

analysis. She further claims that the ALJ failed to consider her visual problems in determining her RFC thereby resulting in a decision not supported by substantial evidence.

Under the Regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal quotations and citations omitted).

Here, the ALJ found that Plaintiff had a severe impairment of osteoarthritis but did not have a severe visual impairment. (R:15) In making her determination, the ALJ found that the medical evidence pertaining to Plaintiff's vision suggested malingering from 2008 to 2012. (R:15) Further, the ALJ explained that the state agency medical consultants thoroughly reviewed the record and found no medical evidence supporting a severe visual impairment. (R:16) Finally, no medical sources ever sought to determine whether Plaintiff's alleged vision deficits were as severe as the visual acuity findings suggested. (R:16)

Review of the medical evidence supports the ALJ's conclusions and shows that despite numerous examinations, the physicians were unable to medically explain the visual defects Plaintiff alleged. For example, in October 2011 Dr. Augustine Eleje performed a consultative evaluation of Plaintiff. (R:230-32) Plaintiff denied any associated signs or symptoms at that time for her alleged vision problems, yet reported that her condition was worsening over time. (R:230) Her corrected visual acuity was reported as 20/200 in each eye. (R:231) Dr. Eleje assessed her with "loss of vision," but did not specify any degree of loss or associated functional limitations. The

ALJ gave this opinion great weight and found it to be supported by other objective evidence and by Plaintiff's ability to engage in daily activities. (R:18)

In January 2012 Dr. Jorge Llamas-Soforo performed a consultative ophthalmological examination of Plaintiff. (R:238-41) Plaintiff reported having had exotropia since childhood and having surgery at approximately age 20 for the condition. (R:238) Plaintiff indicated having blurry vision in both eyes and no movement in the right eye. (R:238) Visual acuity testing revealed Plaintiff's best corrected vision for distance was 20/400 in the left eye and counting fingers in the right eye. (R:238) Despite these findings, the physician reported that the pathology results and funduscopic findings for both eyes were normal. Dr. Llamas-Soforo diagnosed Plaintiff with exotropia in the right eye and visual field defect in both eyes, and concluded that her prognosis was good. (R:239) As noted by the ALJ, however, Dr. Llamas-Soforo had no medical explanation for any of the alleged visual field defects. (R:239)

A state agency medical consultant reviewed the medical records and determined that Plaintiff's alleged visual limitations were not fully supported by the record. (R:249) The medical consultant concluded that Plaintiff could perform work with small objects and was able to avoid ordinary workplace hazards. (R:249) The ALJ concurred in the medical consultant's assessment of Plaintiff's alleged visual impairment. (R:18)

Dr. Marcos Calderon performed a second consultative ophthalmological examination in May 2012. (R:252-53) Plaintiff reported a history of vision problems since having pneumonia as a child. Visual acuity test results showed Plaintiff's best corrected distance vision was light perception with the right eye and counting fingers at 3 feet with the left eye. (R:252) Further examination showed Plaintiff had exotropia in the right eye. (R:252) However, the pathology and

7

funduscopic findings were essentially normal for both eyes. (R:252) Dr. Calderon reported that he did not have a medical diagnosis that would explain Plaintiff's vision problems because the remainder of the examination was essentially normal except for the exotropia. (R:252) He stated that based on the level of visual acuity assessed, Plaintiff would be considered dysfunctional, but that he had doubts and disbelief about the visual acuity test results. (R:253) He recommended reevaluation or searching for prior medical records. (R:253) The ALJ found this opinion to be consistent with and supported by other objective evidence in the record and attributed the opinion great weight (R:19)

Plaintiff also underwent a Visual Evoked Response (VER) study in May 2012. (R:255) Although the results were indicative of marked disturbances, many of the abnormal findings were thought to be caused by Plaintiff's excessive blinking during the test procedure. Therefore, due to the indeterminate findings it was recommended that the test be repeated, but this was never done. (R:255)

On May 23, 2012, Dr. Steven Crouse performed a consultative neurological examination to assess Plaintiff's vision problems. (R:257-58) Plaintiff reported being able to see only "blurred light" and indicated that her right eye was worse than her left eye. (R:257) However, she also reported being able to read with her left eye but stated that she tired easily and got headaches. (R:257) Plaintiff related that she worked in fabric warehouses in activities that required primarily touch. (R:257)

Dr. Crouse observed that upon examination, Plaintiff indicated that she could not move her eyes to either side and would not do so voluntarily. (R:258) Dr. Crouse further reported that he could not perform the visual field testing because Plaintiff stated that she could not see his hands

8

well. (R:258) Plaintiff could count fingers but could not see at the 20/800 distance. (R:258) Dr. Crouse's impression was that Plaintiff had a lifelong visual problem but that he could not determine the exact severity of her condition. (R:258) Dr. Crouse suspected augmentation[6] on the examination, which made it difficult for him to ascertain the true extent of Plaintiff's vision problems. (R:258) Nonetheless, he concluded that her vision problems were enough to disable her from any job requiring "decent vision." (R:258) The ALJ did not give much weight to Dr. Crouse's opinion, however, because it was based primarily on Plaintiff's subjective complaints and was inconsistent with other evidence of Plaintiff's daily activities. (R:19-20)

A state agency medical consultant reviewed the evidence at the time of reconsideration and concluded that the VER test results were indeterminate because of Plaintiff's excessive blinking. (R:271) The medical consultant further concluded that the medical evidence did not support Plaintiff's alleged visual impairment. (R:271) The ALJ agreed with the consultant's findings.

The ALJ discussed additional medical evidence from Dr. Marc Ellman, an ophthalmologist, indicating that Plaintiff had visual difficulty in 2008. (R:20) The records showed visual acuity test results of 20/200 in both eyes. (R:284) Dr. Ellman stated in his treatment notes dated December 9, 2008, that another ophthalmologist who examined Plaintiff in October 2008 noted possible malingering. (R:284)

Despite Plaintiff's allegations of vision problems, the ALJ found that Plaintiff's own description of daily living activities reflected that she could see well enough to engage in normal daily activities and routine tasks. (R:16) Plaintiff stated in a function report that she read the newspaper, went shopping, counted out change, prepared simple meals, used a checkbook,

---

[6] Augmentation means "an adding on." *Dorland's Illustrated Medical Dictionary*, 173 (29th ed. 2000).

9

handled a savings account, and paid bills. (R:142, 143, 144) Plaintiff advised her podiatrist in February 2012 that she walked daily for exercise. (R:273-74) Both Dr. Eleje and Dr. Calderon noted that Plaintiff walked without assistance. (R:231, 252) The ALJ also considered the fact that Plaintiff was able to engage in the duties of her job in 2008 despite reported vision at that time of 20/200. (R:16) After considering the objective and subjective evidence of record the ALJ determined that Plaintiff did not have a visual impairment except for exotropia. (R:16) Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe visual impairment.

Plaintiff claims in a cursory manner that her visual impairment meets or equals the listing of impairments because the evidence shows her visual acuity is 20/200 or less. However, the ALJ found Plaintiff's visual acuity findings inconsistent with the physicians' pathology findings and with Plaintiff's reported activities of daily living. Consequently, given the dearth of support for these alleged visual acuity findings, Plaintiff fails to any show error in the ALJ's step 3 finding.

Plaintiff further asserts that the ALJ should have included visual limitations in the RFC determination. RFC is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite her physical and mental limitations. *Perez*, 415 F.3d at 461-62. The ALJ must consider the limiting effects of an individual's medically determinable impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

In assessing Plaintiff's RFC, the ALJ stated that she considered the entire record. (R:16) As demonstrated in her thorough discussion of the record evidence, the ALJ based her RFC determination on the limitations she found supported by the evidence. The ALJ determined that Plaintiff did not have a visual impairment other than exotropia. Based on the record evidence, this determination is supported by substantial evidence. Moreover, Plaintiff does not challenge the ALJ's findings regarding her osteoarthritis. Consequently, the ALJ's RFC determination was properly based upon the medically determinable impairments and related signs and symptoms supported by the record. Plaintiff has not presented any evidence showing how her alleged visual impairment impacted her ability to work in a manner not accounted for in the ALJ's RFC determination. The Court concludes that the ALJ's RFC determination that Plaintiff can perform a full range of light work is supported by substantial evidence.

The ALJ then proceeded to step 4 of the analysis and determined that Plaintiff could perform her past relevant work as a sales attendant. Other than a conclusory allegation that the finding was based upon an inaccurate RFC, Plaintiff fails to show that she cannot perform her past work and thus fails to meet her burden at this step. The ALJ elicited vocational expert ("VE") testimony that established that an individual with Plaintiff's RFC could perform her past relevant work as a sales attendant. Plaintiff's counsel had an opportunity to question the VE on any alleged visual limitations but did not do so. Therefore, the Court finds that substantial evidence supports the ALJ's finding regarding past relevant work.

In sum, despite Plaintiff's reported loss of vision the Court finds that substantial evidence supports that ALJ's disability determination, based upon the objective medical evidence which did not establish a medical basis for the vision loss, reports of malingering and augmentation, and

Plaintiff's reported activities. Further, Plaintiff fails to demonstrate that she was prejudiced by any failure by the ALJ to properly consider her alleged visual impairment. Because substantial evidence supports the ALJ's findings, any error relating to the ALJ's consideration of the evidence would be harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Consequently, Plaintiff's contentions are without merit.

## VII. CONCLUSION

Accordingly, based upon a review of the evidence, the Court finds that the ALJ's decision comports with relevant legal standards and is supported by substantial evidence. Therefore, Plaintiff's assertions of error are without merit. Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

**SIGNED** and **ENTERED** on July 26, 2016.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**